**In re J T THORPE COMPANY, Debtor.**

No. 02–41487–H5–11.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Jan. 17, 2003.

Alfredo R. Perez, Weil Gotshal et al., Gary Donald Streeting, Jeremy Alistair Mouton, Marcy E. Kurtz, Nicole L. Vozzella, Stephanie Skasko Rosenberg, William Alfred Wood, III, Bracewell & Patterson LLP, Houston, TX, for Debtor.

Diane G. Livingstone, Office of U.S. Trustee, Houston, TX, for Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTING CONFIRMATION OF J T THORPE COMPANY'S PLAN OF REORGANIZATION

KAREN KENNEDY BROWN, Bankruptcy Judge.

This matter came before the Bankruptcy Court and the District Court[1] upon request for confirmation of the Plan of Reorganization,[2] filed on October 1, 2002 by J T Thorpe Company, the debtor and debtor-in-possession herein ("J T Thorpe" or the "Debtor") as modified by the Court's Order dated December 18, 2002 (Docket No. 348) and the Confirmation Order, which incorporates by reference that certain Stipulation and Order dated December 17, 2002 (Docket No. 342) (the "Stipulation

1. At the Confirmation Hearing, Judge Gilmore indicated that she would enter a separate order adopting this Court's Findings of Fact and Conclusion of Law.

2. Capitalized terms used in this Order and not otherwise defined shall have the respective defined meanings set forth in the Glossary of Terms attached as Exhibit A to the Disclosure Statement of J T Thorpe Company dated August 13, 2002, as such Glossary may be amended by the Confirmation Order.

and Order"). The Plan of Reorganization, as so modified, is hereinafter referred to as the "Plan." After notice, a combined hearing was held on confirmation of the Plan commencing, on December 16, 2002 (the "Confirmation Hearing"). Appearances were noted in the record. All objections to confirmation of the Plan have been withdrawn or otherwise resolved or overruled.

Upon consideration of the record of the Confirmation Hearing (including all testimony proffered and exhibits presented) and upon all of the pleadings and proceedings filed and conducted in this Chapter 11 Case,[3] and after due deliberation and sufficient cause appearing therefore, this Court hereby makes the following findings of fact and conclusions of law:[4]

## I. IT IS HEREBY FOUND AND DETERMINED THAT SUBJECT TO THE PROVISIONS OF, AND EXCEPT AS OTHERWISE PROVIDED IN, THE STIPULATION AND ORDER, WHICH IS INCORPORATED HEREIN BY REFERENCE:

A. *Exclusive Jurisdiction: Venue: Core Proceeding (11 U.S.C. § 157(b)(2) and 1334(a)).*

1. This Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this District was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B. *Judicial Notice.*

2. This Court takes notice of the docket of the Chapter 11 Case maintained by the Clerk of the Court and/or its duly appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of this Chapter 11 Case, including, but not limited to, the Confirmation Hearing.

C. *Background.*

3. On October 1, 2002, the Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4. No trustee or examiner has been appointed in this Chapter 11 Case. The Debtor has continued to operate its business and manage its property as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. On October 6, 2002, the U.S. Trustee appointed the Asbestos Claimants Committee to serve as an official committee in this case.

D. *Transmittal and Mailing of Materials; Notice.*

5. The Plan, Disclosure Statement, ballots, and notice were transmitted in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and applicable nonbankruptcy law, and such transmittal was adequate and sufficient. The Plan was transmitted to substantially all creditors

---

**3.** *"Chapter 11 Case"* means *In re J T Thorpe Company,* Case No. 02–41487–H5–11, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

**4.** Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* FED. R. BANKR P. 7052.

(or their representatives) in the impaired classes of Claims and to all holders of equity securities in the impaired class of Interests, along with disclosure of adequate information, as part of the Debtor's solicitation of acceptances before the Petition Date.

6. Adequate and sufficient notice of the Confirmation Hearing within the time and in accordance with the procedures approved and prescribed by this Court, including but not limited to such procedures set forth in the Order Approving Notice Procedures of Individual Asbestos Claimants, entered October 2, 2002, was given in compliance with Sections 524(g)(1)(A) and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3020, and other applicable law.

E. *Solicitation.*

7. Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with Sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, and other applicable provisions of the Bankruptcy Code.

8. The period prescribed for creditors and equity security holders to vote to accept or reject the Plan was not unreasonably short within the meaning of Bankruptcy Rule 3018.

F. *Distribution.*

9. All procedures used to distribute solicitation materials to the applicable holders of Claims, including Asbestos Claims and Interests, and to tabulate the ballots, were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the local rules of this Court.

G. *Impaired Classes that Voted to Accept the Plan.*

10. As evidenced by the Affidavit of William A. ("Trey") Wood in Support of Solicitation Process and Voting Results (the "Ballot Affidavit"), which affirms both the method and results of voting, Classes 2, 3, 4, 7 and 8, the impaired classes under the Plan, have accepted the Plan pursuant to the requirements of Sections 1124 and 1126 of the Bankruptcy Code. Thus, "at least one class of claims that is impaired" has voted to accept the Plan as required by Section 1129(10) of the Bankruptcy Code.

H. *Burden of Proof.*

■ 11. The Debtor, as proponent of the Plan, has met its burden of proving, by a preponderance of the evidence, that the elements of Sections 524(g) and 1129(a) of the Bankruptcy Code are satisfied.

I. *Plan Compliance with Requirements of Section 1129.*

12. *11 U.S.C. § 1129(a)(1).* The Plan complies with the applicable provisions of the Bankruptcy Code, including the requirements of Sections 1122 and 1123(a) and (b) of the Bankruptcy Code, thereby satisfying Section 1129(a)(1) of the Bankruptcy Code.

(a) *Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).* In addition to Administrative Claims and Priority Tax Claims, which need not be designated, the Plan designates eight Classes of Claims and Interests. The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, in each such Class or subclass. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes and the Plan treatment thereof do not unfairly discriminate between holders of Claims or Interests. Thus, the Plan

satisfies 11 U.S.C. §§ 1122 and 1123(a)(1).

(b) *Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2)).* Article 3 of the Plan specifies that Classes 1, 5, and 6 are unimpaired under the Plan, thereby satisfying 11 U.S.C. § 1123(a)(2).

(c) *Specify Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).* Article 3 of the Plan designates Classes 2, 3, 4, 7 and 8 as impaired and specifies the treatment of the Claims and Interests in those Classes, thereby satisfying 11 U.S.C. § 1123(a)(3).

(d) *No Discrimination (11 U.S.C. § 1123(a)(4)).* The Plan provides for the same treatment by the Debtor for each Claim or Interest in each respective Class, thereby satisfying 11 U.S.C. § 1123(a)(4).

(e) *Implementation of Plan (11 U.S.C. § 1123(a)(5)).* The Plan provides adequate and proper means for its implementation including, among other things, (a) creation of the Successor Trust to channel Asbestos Claims; (b) the issuance to the Successor Trust of the Promissory Note in the amount of $2,300,000.00 secured by the stock of the Reorganized J.T. Thorpe Company; (c) revesting of property in the Reorganized J.T. Thorpe Company; and (d) establishment of procedures for paying claims, thereby satisfying 11 U.S.C. § 1123(a)(5).

(f) *Non–Voting Equity Securities (11 U.S.C. § 1123(a)(6)).* Article 8.3 of the Plan provides that the Amended Certificate of Incorporation of the Reorganized Debtor shall provide for the inclusion of a provision prohibiting the issuance of nonvoting equity securities. Thus, the requirements of 11 U.S.C. § 1123(a)(6) are satisfied.

(g) *Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).* The Debtor disclosed in a writing filed with the Bankruptcy Court the board of directors and officers of the Reorganized Debtor. Accordingly, this disclosure satisfies the requirements of 11 U.S.C. § 1123(a)(7).

(h) *Additional Plan Provisions (11 U.S.C. § 1123(b)).* The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) the disposition of executory contracts and unexpired leases; (b) the Reorganized Debtor's retention of, and right to enforce, sue on, settle or compromise (or decline to do any of the foregoing) all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any person or entity; (c) the treatment of rights of holders of Claims and Interests; (d) releases of various persons and entities with respect to actions taken in furtherance of the Chapter 11 Case; and (e) the Injunctions in favor of the Released Parties and any Protected Party.

(i) *Bankruptcy Rule 3016(a).* The Plan is dated and identifies the entity submitting it as a proponent, thereby satisfying Bankruptcy Rule 3016(a).

13. *Debtor's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).* The Debtor has complied with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1129(a)(2) of the Bankruptcy Code. Specifically:

(a) The Debtor is a proper debtor under Section 109 of the Bankruptcy Code and a proper proponent of the Plan under Section 1121(a) of the Bankruptcy Code.

(b) The Debtor has complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of this Court.

(c) The Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and applicable non-bankruptcy law in transmitting the Plan, the Disclosure Statement, the ballots, and related documents and notices and in soliciting and tabulating votes on the Plan.

14. *Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).* The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying Section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation of the Plan and the filing of the Chapter 11 Case. The Plan is the result of arm's-length negotiations among entities having very different and, in many instances, competing interests. The Debtor filed this Chapter 11 Case and Plan with the legitimate and honest purpose of developing an orderly process, utilizing Section 524(g) of the Bankruptcy Code, to compensate legitimate Asbestos Claimants fairly, while preserving the Debtor's business. As such, the Plan satisfies 11 U.S.C. § 1129(a)(3).

15. *Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).* Any payment made or to be made by the Debtor, for services or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying Section 1129(a)(4) of the Bankruptcy Code.

16. *Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).* The Debtor has complied with Section 1129(a)(5) of the Bankruptcy Code. Specifically:

(a) The Debtor has disclosed in the Disclosure Statement and at the Confirmation Hearing the identity and affiliations of any individual proposed to serve, after Confirmation of the Plan, as a director or officer of Reorganized J T Thorpe Company, and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and with public policy.

(b) The Debtor has disclosed the identity and compensation of any insider who will be employed or retained by Reorganized J T Thorpe Company and the nature of such person's compensation, to the extent known.

17. *No Rate Changes (11 U.S.C. § 1129(a)(6)).* The Plan does not contain any changes in rates subject to the jurisdiction of any governmental regulatory commission. Thus, Section 1129(a)(6) of the Bankruptcy Code is satisfied through non-application in this Chapter 11 Case.

18. *Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)).* The Plan satisfies Section 1129(a)(7) of the Bankruptcy Code in that each holder of a Claim in an impaired class is receiving property of a value that is not less than the amount such holder would receive if the Debtor were liquidated in a Chapter 7 case.

19. *Acceptance of Plan (11 U.S.C. § 1129(a)(8)).* Classes 1, 5, and 6 are Classes of unimpaired Claims and are conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code. Classes 2, 3, 4, 7, and 8 have voted to accept the Plan in accordance with Sections 1126(c) and (d) of the Bankruptcy Code as follows:

(a) over 99% in number and 99% in aggregate principal amount of holders of Claims in Class 2 who voted have voted to accept the Plan;

(b) 99% in number and 99% in aggregate principal amount of holders of

788

Claims in Class 3 who voted have voted to accept the Plan;

(c) 100% in number and 100% in aggregate principal amount of holders of Claims in Class 4 who voted have voted to accept the Plan;

(d) over 99% in number and over 99% in aggregate principal amount of holders of Claims in Class 7 who voted have voted to accept the Plan; and

(e) 100% in amount of holders of Interests in Class 8 who voted have voted to accept the Plan.

Thus, the Plan satisfies Section 1129(a)(8) of the Bankruptcy Code. As disclosed in the Ballot Affidavit, Debtor's counsel is aware of at least five (5) law firms (the "Known Law Firms") that submitted cover letters to their clients stating that they intended to cast a vote on the client's behalf in favor of the Plan unless the client instructed the law firm not to do so. Only four (4) of these five (5) firms cast a Master Ballot on behalf of their clients. The affirmative votes under these four (4) Master Ballots totaled 6,788. If the affirmative votes executed by the Known Law Firms were not counted, the total number of votes cast in favor of the Plan by Asbestos Claimants would still meet requirements of § 524(g) and 1129(c)(8). The percentage accepting would be 99.971% as opposed to the current 99.985% (counting those claimants).

20. *Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).* The treatment of Administrative Expense Claims under Article 1.1 of the Plan satisfies the requirements of Sections 1129(a)(9)(A) and (B) of the Bankruptcy Code. The treatment of Priority Tax Claims under Article 1.2 of the Plan satisfies the requirements of Section 1129(a)(9)(C) of the Bankruptcy Code.

21. *Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).* Classes 2, 3, 4, and 7 have voted to accept the Plan, and such Classes contain no "insiders," thus satisfying Section 1129(a)(10) of the Bankruptcy Code. Class 8, while voting to accept the Plan, is an impaired Class that contains "insiders".

■ 22. *Feasibility (11 U.S.C. § 1129(a)(11)).* The Plan is found and determined to be feasible. The Debtor has the ability to satisfy its financial obligations under the Plan, while maintaining sufficient liquidity and resources to conduct its ongoing business. Consequently, confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of Reorganized J T Thorpe Company, thereby satisfying Section 1129(a)(11) of the Bankruptcy Code.

23. *Payment of Fees (11 U.S.C. § 1129(a)(12)).* All fees payable under 28 U.S.C. § 1930, as determined by the Court, have been paid or will be paid when due, pursuant to Article 7.2(e) of the Plan, thus satisfying the requirements of 11 U.S.C. § 1129(a)(12).

24. *Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).* The Debtor has no obligation to pay "retiree benefits."

J. *Plan Compliance with Requirements of Section 524(g).*

25. As of the Petition Date, the Debtor has been named as a defendant in personal injury, wrongful death or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products. The Discharge Injunction, the Supplemental Injunction and the Third Party Injunction set forth in the Plan are to be implemented in connection with the Successor Trust ("Trust") as follows:

(a) The Successor Trust assumes the liabilities of the Debtor with respect to

all Asbestos Claims and all Unknown Asbestos Claims on the Effective Date.

(b) The Successor Trust is to be funded in part by a Promissory Note for $2.3 million, to be funded by Reorganized J T Thorpe Company and Thorpe Corporation on the Effective Date, and by the obligations of Reorganized J T Thorpe Company and Thorpe Corporation to make future payments in respect of the Promissory Note. The Successor Trust is to be funded in part by proceeds received pursuant to the terms of the Asbestos Insurance Action Recoveries, the Asbestos In–Place Insurance Coverage, the Asbestos Insurance Settlement Agreements, and by the Asbestos Insurance Policies.

(c) The Common Stock of Reorganized J T Thorpe Company shall be pledged to the Successor Trust to secure the Promissory Note pursuant to the Pledge Agreement. In the Event of a Default, as defined in the Pledge Agreement, the Common Stock and all its rights shall vest in the Successor Trust.

(d) The Successor Trust is to use its assets and income to pay Asbestos Claims, including all Unknown Asbestos Claims and Demands.

Therefore, the Plan complies with Section 524(g)(2)(B)(i).

26. The Debtor is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the existing Asbestos Claims which are addressed by the Supplemental Injunction and the Third Party Injunction. Thus, the Plan satisfies Section 524(g)(2)(B)(ii)(I) of the Bankruptcy Code.

27. The actual amounts, numbers, and timing of future Demands cannot be determined. Thus, the Plan satisfies Section 524(g)(2)(B)(ii)(II) of the Bankruptcy Code.

28. Pursuit of Demands outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Asbestos Claims and future Demands. Thus, the Plan satisfies Section 524(g)(2)(B)(ii)(III) of the Bankruptcy Code.

29. The terms of the Discharge Injunction, the Supplemental Injunction, and the Third Party Injunction, including provisions barring actions by or against third parties, are set forth in the Plan and described in the Disclosure Statement. Thus, the Plan satisfies Section 524(g)(2)(B)(ii)(IV)(aa) of the Bankruptcy Code and Bankruptcy Rule 3016(c).

30. The Plan satisfies Section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code because:

(a) over 99% of the holders of Claims in Class 2 who voted have voted to accept the Plan;

(b) over 99% of the holders of Claims in Class 3 who voted have voted to accept the Plan; and

(c) over 99% of the holders of Claims in Class 7 who voted have voted to accept the Plan.

31. Pursuant to this Order and the Successor Trust Agreement, the Successor Trust shall operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of present Asbestos Claims and future Asbestos Claims and Demands, or other comparable mechanisms, that provide reasonable assurance that the Successor Trust shall value, and be in a financial position to pay, similar present Asbestos Claims and future Asbestos Claims and/or Demands in substantially the same manner. Therefore, the Plan satisfies Section 524(g)(2)(B)(ii)(V) of the Bankruptcy Code.

32. Richard B. Schiro, Esq. was appointed by the Bankruptcy Court as the Legal Representative for the purpose of, among other things, protecting the rights of persons that might subsequently assert Asbestos Claims or Demands of the kind that are addressed in the Supplemental Injunction and the Third Party Injunction and transferred to the Successor Trust. Mr. Schiro was requested to serve in that capacity in August 2002 and did so in connection with the negotiation, preparation, and solicitation of acceptances of the Plan prior to the Petition Date. Therefore, the Plan satisfies Section 524(g)(4)(B)(i) of the Bankruptcy Code.

■ 33. In light of the benefits provided, or to be provided, to the Successor Trust by or on behalf of the Released Parties[5] and the Protected Parties, the extension of the Discharge Injunction, the Supplemental Injunction, and the Third Party Injunction to those parties is fair and equitable with respect to Entities that might subsequently assert Asbestos Claims or Demands against the Released Parties and/or Protected Parties.

34. Thorpe Corporation, parent company of Debtor, on its own behalf and behalf of its Subsidiaries agreed to fund certain Transaction Costs, transfer certain assets to the Successor Trust and pledge its Interests in the Debtor to secure the Debtor's obligation under the promissory note in the amount of $2,300,000 to the successor trust in exchange for the releases and injunctions described in the Thorpe Corporation Settlement Agreement.

35. Thorpe Corporation has loaned or will loan and/or advance funds to the Debtor to permit the Debtor to pay up to $3,500,000 for Transaction Costs for costs and expenses associated with the implementation of the Plan of the Debtor under the terms set forth in the Thorpe Corporation Settlement Agreement.

36. Thorpe Corporation and its Subsidiaries, Thorpe Products Company and Leacon Sunbelt, have agreed to assign and grant to the Successor Trust any and all of their rights to claims against all insurance policies on which they are named insureds through July 1, 1986 which are listed on Schedule 4 of the Thorpe Corporation Settlement Agreement.

37. Thorpe Corporation and the Subsidiaries have agreed to release any and all claims they may have against payments made to the Debtor by the MPIST or Republic Insurance Company as described in the Thorpe Corporation Settlement Agreement.

38. Thorpe Corporation has agreed to issue a promissory note, along with Debtor, to the Successor Trust in the amount of $2,300,000 for the full equity value of the Debtor as of the Confirmation Date of the Plan.

39. Thorpe Corporation has agreed that its Interests in Reorganized J T Thorpe Company shall be pledged to the Successor Trust to secure the promissory note described above, all as per the terms of a pledge agreement.

40. Thorpe Corporation and its Subsidiaries agreed to such obligations and agreements as set forth above and in the Thorpe Corporation Settlement Agreement, conditioned upon entry of an order confirming the Debtor's Plan containing channeling injunctions under 11 U.S.C. §§ 524(g) and 105 as set forth in the Thorpe Corporation Settlement Agreement.

---

**5.** "Released Parties," for purposes of this Order, shall include the Released J T Thorpe Company Parties, the Released Thorpe Corporation Parties, the Released Non–Debtor Parties and the Released Parties as defined in the Plan.

41. The contributions of Thorpe Corporation and Subsidiaries provide benefits such that entry of channeling injunctions under 11 U.S.C. §§ 524(g) and 105 in favor of Thorpe Corporation and Subsidiaries is fair and equitable with respect to the Persons that might subsequently assert Demands.

42. The Plan otherwise complies with Section 524(g) of the Bankruptcy Code.

### K. *Principal Purpose of Plan (11 U.S.C. § 1129(d)).*

43. The principal purpose of the Plan is implementation of an orderly process, utilizing Section 524(g) of the Bankruptcy Code, to compensate legitimate Asbestos Claimants fairly, while preserving the Debtor's business.

### L. *Good Faith Solicitation (11 U.S.C. § 1125).*

44. Based upon the record before the Court, the Debtor transmitted the solicitation materials and solicited acceptances and rejections of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code. Thus, the Debtor is entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Articles 8.7 and 9.1 of the Plan.

### M. *Settling Asbestos Insurance Companies.*

45. The Debtor has listed on its schedule and designated for the purposes of this Plan the following Entities as Settling Asbestos Insurance Companies:

(a) As set forth in that certain Settlement Agreement and Release By and Between Thorpe and Federal/Vigilant: "Federal/Vigilant," defined as Federal Insurance Company and Vigilant Insurance Company, and their respective predecessors, successors, and assigns; as well as the "Federal/Vigilant Releasees," defined as Federal/Vigilant, and each of its officers, directors, employees, shareholders, parents, partners, owners, principals, subsidiaries, affiliates, attorneys, and agents, in their capacities as such;

(b) As set forth in that certain Settlement Agreement and Release By and Between Thorpe and CNA: "CNA," defined as the CNA Service Mark Companies listed in Attachment A to such Settlement Agreement, and their respective predecessors, successors, and assigns; as well as the "CNA Releasees," defined as CNA, and each of its officers, directors, employees, shareholders, parents, partners, owners, principals, subsidiaries, affiliates, attorneys, and agents, in their capacities as such;

(c) "Hartford," defined as Alpine Life Insurance Company, American Maturity Life Insurance Company, Excess Insurance Co., Ltd., Fencourt Reinsurance Company, Ltd., First State Insurance Company, Galcia Vida Compania de Seguros, S.A., Hartford Accident and Indemnity Company, Hartford (Bermuda), Ltd., Hartford Casualty Insurance Company, Hartford Europe, Inc., The Hartford Financial Services Group, Inc., Hartford Financial Services Corporation, Hartford Fire Insurance Company, Hartford Insurance Company of Canada, Hartford Insurance Company of Illinois, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast, Hartford Insurance, Ltd., The Hartford International Financial Services Group, Inc., Hartford International Insurance Company, NV, Hartford Life, Inc., Hartford Life Insurance of Canada, Hartford Life and Accident Insurance Company, Hartford Life Insurance Company, Hartford Life and Annuity

Insurance, Hartford Lloyd's Insurance Company, Hartford Management, Ltd., Hartford Seguros de Vida, Hartford Underwriters Insurance Company, Heritage Holdings, Inc., HL Investment Advisors, Inc., Institute de Salt Compania de Seguros, ITT Assurances S.A., ITT Recoups de Seguros y Erasures, S.A., ITT Hartford Canada Holdings, Inc., ITT Hartford International Life Reassurance, ITT Hartford International, Ltd., ITT Hartford Life International, Ltd., ITT Hartford Life, Ltd., ITT Hartford Seguros de Vida, ITT Hartford Seguros de Et., ITT Hartford Sudamericana Holding, London and Edinburgh Insurance Company, Ltd., London and Edinburgh Insurance Group, Ltd., London and Edinburgh Life Assurance Company, New England Insurance Company, New England Reinsurance Corporation, New Ocean Insurance Company, Ltd., Nutmeg Insurance Company, Omni Insurance Company, Omni Indemnity Company, Omni Insurance Group, Inc., Pacific Insurance Company, Ltd., Property & Casualty Insurance Company of Hartford, Royal Life Insurance Company, Sentinel Insurance Company, Ltd., Trumbull Insurance Company, Trumbull Services, L.L.C., Twin City Fire Insurance Company, Zwolsche Algemeene Hervertzekering, BV, Zwolsche Algemeene Levensverzekering and Zwolsche Algemeene Schadeverzekering, and their respective predecessors, successors and assigns; as well as the "Hartford Releasees," defined as Hartford and each of its respective officers, directors, employees, shareholders, parents, partners, owners, principals, subsidiaries, affiliates, attorneys, holding companies, merged companies, divisions, predecessors and agents, but

only with respect to insurance policies issued by Hartford to Thorpe (defined for purposes of this Section 45(c) as J T Thorpe Company, Thorpe Corporation and Thorpe Products Company, and their respective predecessors, successors and assigns);

(d) As set forth in that certain Settlement Agreement and Release By and Between J T Thorpe Company and Republic: The "Republic Companies," defined as Republic Insurance Company, Columbia Insurance Company, BH Columbia, Inc., OBH Inc., and Berkshire Hathaway Inc.; and;

(e) As set forth in that certain Settlement Agreement and Release By and Between Thorpe and St. Paul: "St. Paul," defined as St. Paul Fire and Marine Insurance Company and its predecessors, successors and assigns; as well as the "St. Paul Releasees," defined as St. Paul, and each of its officers, directors, employees, shareholders, parents, partners, owners, principals, subsidiaries, affiliates, attorneys, and agents, in their capacities as such.

N. *Approval of Settlement Agreements.*

46. In entering into the settlement agreements with the Settling Asbestos Insurance Companies and the Thorpe Corporation Settlement Agreement, the Debtor considered the probability of success in the litigation of its claims; the difficulties, if any, to be encountered in the matter of collections of such claims; the complexity of such litigation, and the expense, inconvenience, and delay necessarily attending it; and the paramount interests of creditors and a proper deference to their reasonable views in the premises. The Court has determined that the terms of the compromises and exchanges of consideration set forth in these agreements

are in the best interests of the Debtor, its Estate, and all holders of claims against the Debtor, are reasonable and are entered into in good faith.

### O. *Assumption of Executory Contracts and Unexpired Leases, Adequate Assurance.*

47.   Assumption or rejection of executory contracts shall be governed by Article 5 of the Plan. There has not been a default in any executory contract or unexpired lease of the Debtor to be assumed under the Plan. Therefore, the Debtor has no obligation to cure, compensate or provide adequate assurance of future performance under Section 365(b)(1).

### P. *Satisfaction of Confirmation Requirements.*

48.   The Plan satisfies the requirements for confirmation set forth in Section 1129 of the Bankruptcy Code.

### Q. *Retention of Jurisdiction.*

49.   The Court may properly retain jurisdiction over the matters set forth in Article 12 of the Plan.

### R. *Inconsistency*

50.   In the event of any inconsistency between these Findings of Facts and Conclusions of Law and the Stipulation and Order, the Stipulation and Order shall control.